By the Court, Bronson, J.
Although the defendants and their principals, Messrs. Ewer & Mix and Mr. Darby, are wholly without fault in this matter, and may already have suffered from the fraud of Holmes, that cannot affect the present inquiry. Insurance was effected in the names of the defendants, on account of whom it might concern, the legal interest then being in Holmes. In effect, the policies were for his benefit, and the assignees took subject to such rights as existed between him and the company. If the. defendants had paid the premium, they would have charged it to their principals, and the latter would have charged the amount to Holmes, for whose benefit the payment would have been made. The defendants, in effect, gave their notes, for the debt of Holmes, and they now stand in his place. The question is substantially the same as it would have been had Holmes paid the premium and was now suing to recover it back. If he could not succeed in such an action, neither he nor his sureties can resist the payment of the premium notes.
It was held at one period, that when the policy is void on account of the fraud of the insured in procuring it, the premium must be returned. (Whittingham v. Thornburgh, 2 Vern. 206, Prec. in Chan. 20; De Costa v. Scandret, 2 P. Wms. *424 170, 2 Eq. Cas. Ab. 636, pl. 2.) And see Wilson v. Ducket, (3 Burr. 1361,) where, as I understand the case, the question was left undecided., But it is now settled in England, that in cases of actual fraud by the assured or his agent, the premium cannot be recovered back. (Tyler v. Hern and Chapman v. Fraser, Park On Ins. 218, 3rd Lond, ed., and Marsh. On Ins. 652.) The same point has been adjudged in Massachusetts. (Hoyt v. Gilman, 8 Mass. Rep. 336. And see 3 Kent, 341; Ellis On Ins. 141, 2; 2 Phil. Ins. 548.) And the rule would probably be so held every where.
But it is not necessary to go so far in this case, for here the policies were not void. On the contrary, the policies attached on the subjects insured, and the company incurred the risk, or some part of it; and there is no return of premium where the policy attached, though only for a single moment. (Hendricks v. Commercial Ins. Co., 8 John. 1.) The fraud which Holmes contemplated, and' which was afterwards carried into execution-, did not enter into the contract. There was no misrepresentation or concealment for- the purpose of inducing the company to take the risk. The fraud consisted in the purpose and attempt to charge the company for a loss not coming within the perils insured against. The actions which were brought against the company could not have failed on'the ground that the policies were void ab initio. They must have failed on. the ground that there had been no loss by the perils of the sea. If the brig had been burned at' the dock in New-York after the cargo was on board, or if she had been lost in a storm immediately after passing Sandy Hook, without -any fault on the part of the captain and hands, it can hardly be doubted that the cbmpany would have been liable.. It would be no answer for them to show; that there was an unexecuted intention to destroy the vessel and cargo. The mere intention tb do a wrbn'g; rarely; if ever; constitutes a crime Or a fault of which the law will take cognizance: There must be an act done before the intent can become an important inqtdry. As the contract was valid; and the risk commenced; the plaintiffs áre clearly entitled tb recover the whole or some part of the premium:
*425 But the voyage was divisible into distinct risks, and a particular premixun was to be paid for. each; and no risk having been run as to the return voyage, the premium may be apportioned. The policies were on a -voyage “ at and from New-York to Montevideo and Bxxenos Apes; and at and from thence back to New-York.” If there had been nothing more, and the premium had been entire for the whole voyage, there could be no apportionment. Bxxt the premimn was, “ one and three quarters per cent, each way.” Here, the parties, instead of fixing the premimn at three and a half per cent on the whole risk, have divided it, and agreed that one half of that amoxmt shall be charged on the outward, and the other half on the retxxrn voyage. They have thus, in effect, provided for two voyages or risks, with a specified premimn for each. As the company has never incurred any risk on account of the return voyage, no part of the premium for that should be demanded. If the premium had been paid, it might have been recovered back. I need not refer to the cases, for although there is some conflict in the books in relation to a return of premium where the policy has once attached, there is, I think, no case which denies that there may be an apportionment where the parties have provided for distinct risks, and affixed a specified premium to each.
On the same principle I think there should be a dedxxction of one half per cent., because Buenos Ayres was not used. The parties have, in effect, made the outward voyage divisible into two parts: first, from New-York to Montevideo; and second, from thence to Buenos Ayres; and have affixed separate premiums to each risk, to wit, one and three-fourths per cent, if the brig went up the river to Buenos Ayres, and one and one-fomth per cent, if the voyage terminated at Montevideo. The vessel did not reach the first port of destination. The risk from that port to Buenos Ayres has not been ran, and the specified premium for that risk should not be demanded.
In Tyrie v. Fletcher, (Cowp. 666,) Lord Mansfield said, “ where the risk has not been run, whether its not having been ran was owing to the fault, pleasure, or will of the insured, or *426 to any other cause, the premium shall be returned; because a policy of insurance is a contract of indemnity.” Although this, like some other sweeping remarks made by that great man, must be taken with some allowance," I think it may safely be applied to this case. The fraud of Holmes does not necessarily enter into the question, and in allowing a partial return of premium, there is no more than a seeming conflict with the rule before mentioned, that there • shall be no return of premium where the policy is void on account of the fraud of the insured in procuring it. In that class of cases, the risk specified in the contract, assuming it to be valid, has actually been run, and there has been a loss by the perils insured against. If the insurer is sued for the loss, he is put to the necessity Of showing the fraud to discharge himself. And if the insured sues for a return of premium, he is obliged to set up his own fraud to make a title to the money. But here, the insurer has never been in any peril of answering for á loss on the return voyage,- or the voyage up the La Plata to Buenos Ayres. And if the insured were suing for a return of premium, he would not be driven to allege his own fraud. It would be enough for him to show that the adventure terminated before reaching -Montevideo, and so the risk beyond that port, and for the return voyage, had not been run. I think this a safe rule, viz. that where the insured sues for a loss, and fails, on the ground that the contract is void by reason of his own fraud in procuring it, or where he sues for a return of premium, and is Obliged to show his own fraud in making title to the money, there he shall not have a return; but when the contract is valid, and the insured can make title to a return of premium without • showing his own' ■fraud, there he may recover, although but for his own fault the peril insured against might have been run.
On the principles which have been stated, there must be a deduction of one half from the amount of the premium notes on account of the return voyage, and a further deduction of one half of one per cent, for the voyage between Montevideo and Buenos Ayres. For the balance with interest, which the jury have assessed at $302,50, the plaintiffs .are entitled to judgment
Ordered accordingly.